Yvonne Arvanitis Fossati (SBN 161764)
ArvanitY@jacksonlewis.com
Thomas G. Mackey (SBN 174572)
MackeyT@jacksonlewis.com
Dorothy L. Black (SBN 211260)
Dorothy.black@jacksonlewis.com
JACKSON LEWIS LLP
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Tel: (213) 689-0404
Fax: (213) 689-0430

Attorneys for Defendant
LIBERTY MUTUAL INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOY SLAGEL,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, ARIAM ALEMSEGHED, LEANN LO, and DOES 1 to 100, inclusive,<br><br>Defendants. | **CASE NO.: 2:18-cv-689**<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§1332, 1441(a) AND (b) DIVERSITY**<br><br>(Civil Case Cover Sheet, Notice of Interested Parties, Declarations of Yvonne Arvanitis Fossati, Michael B. Garvey, Ariam Alemseghed, LeAnn Lo, and Exhibits To the Fossati Declaration, Notice of No Related Cases, and Request for Judicial Notice Filed Concurrently Herewith) |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF JOY SLAGEL AND HER COUNSEL OF RECORD HEREIN:**

PLEASE TAKE NOTICE that Defendant Liberty Mutual Insurance Company ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§1332, 1441(a) and 1441(b) and removes to this Court from the State Court action described below, as follows:

UNITED STATES DISTRICT

## SERVICE AND PLEADINGS FILED IN STATE COURT

1.     On January 26, 2017, Plaintiff filed a civil complaint in the Superior Court of the State of California, County of Los Angeles ("Los Angeles County Superior Court"), entitled *Joy Slagel vs. Liberty Mutual Insurance Company, Ariam Alemseghed, LeAnn Lo, and Does 1 to 100, inclusive,* Los Angeles County Superior Court Case No. BC648246 (the "Action"). Plaintiff's complaint ("Complaint") in the Action alleges the following 12 causes of action: (1) discrimination on the basis of age in violation of California Fair Employment and Housing Act ("FEHA"); (2) harassment on the basis of age in violation of FEHA; (3) retaliation for complaints of discrimination and/or harassment on the basis of age in violation of FEHA; (4) discrimination on the basis of taking disability leave in violation of FEHA; (5) retaliation for taking disability leave in violation of FEHA; (6) failure to provide reasonable accommodation in violation of FEHA; (7) failure to engage in the interactive process in violation of FEHA; (8) breach of express oral contract not to terminate employment without good cause; (9) breach of implied-in-fact contract not to terminate employment without good cause; (10) wrongful termination in violation of public policy; (11) violation of Labor Code §1102.5; and (12) intentional infliction of emotional distress. A true and correct copy of Plaintiff's Complaint is attached to the Declaration of Yvonne Arvanitis Fossati filed concurrently herewith ("Fossati Dec.") as **Exhibit A**.

2.     On January 26, 2017, Plaintiff filed a Civil Case Cover Sheet in Los Angeles County Superior Court. A true and correct copy of Plaintiff's Civil Case Cover Sheet is attached to the Fossati Decl. as **Exhibit B**.

3.     On January 26, 2017, a Summons was issued and filed by Plaintiff in Los Angeles County Superior Court. A true and correct copy of the Summons is attached to the Fossati Decl. as **Exhibit C**.

4.     On January 26, 2017, the Los Angeles County Superior Court issued a Notice of Case Assignment. A true and correct copy of the Notice of Case Assignment is attached to the Fossati Decl. as **Exhibit D**.

NOTICE OF REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT

5. On or about February 4, 2017, a copy of the Summons and Complaint were served upon Defendant LeAnn Lo. True and correct copies of the Summons and Complaint are attached to the Fossati Decl. as **Exhibit E.**

6. On or about February 7, 2017, a copy of the Summons and Complaint were personally served upon Defendant Liberty Mutual's registered agent for service of process. True and correct copies of the Summons and Complaint are attached to the Fossati Decl. as **Exhibit F.**

7. On or about February 7, 2017, a Proof of Service of Summons upon Defendant Liberty Mutual's registered agent for service of process was filed by Plaintiff in Los Angeles County Superior Court. A true and correct copy of the Proof of Service of Summons is attached to the Fossati Decl. as **Exhibit G**.

8. On or about February 14, 2017, a Proof of Service of Summons upon Defendant LeAnn Lo was filed by Plaintiff in Los Angeles County Superior Court. A true and correct copy of the Proof of Service of Summons is attached to the Fossati Decl. as **Exhibit H**.

9. On or about February 15, 2017, a copy of the Summons and Complaint were personally served upon Defendant Ariam Alemseghed. True and correct copies of the Summons and Complaint are attached to the Fossati Decl. as **Exhibit I.**

11. On or about March 23, 2017, on behalf of Defendant Liberty Mutual, the undersigned caused an Answer to Plaintiff's Complaint to be filed in the Los Angeles County Superior Court. A true and correct copy of the Answer in the state court action is attached to the Fossati Decl. as **Exhibit J**.

12. On or about March 23, 2017, on behalf of Defendant Ariam Alemseghed, the undersigned caused an Answer to Plaintiff's Complaint to be filed in the Los Angeles County Superior Court. A true and correct copy of the Answer in the state court action is attached to the Fossati Decl. as **Exhibit K**.

13. On or about March 23, 2017, on behalf of Defendant LeAnn Lo, the undersigned caused an Answer to Plaintiff's Complaint to be filed in the Los Angeles

County Superior Court. A true and correct copy of the Answer in the state court action is attached to the Fossati Decl. as **Exhibit L**.

14. On or about March 28, 2017, the Los Angeles County Superior Court issued a Notice of Hearing scheduling a Case Management Conference for May 26, 2017. A true and correct copy of the Notice of Hearing Scheduling a Case Management Conference is attached to the Fossati Decl. as **Exhibit M**.

15. On or about April 6, 2017, Plaintiff filed a Notice of Case Management Conference for May 26, 2016 ("Plaintiff's Notice"). A true and correct copy of Plaintiff's Notice is attached to the Fossati Decl. as **Exhibit N**.

16. On or about April 6, 2017, Plaintiff filed Case Management Conference Statement ("Plaintiff's Statement"). A true and correct copy of Plaintiff's Statement is attached to the Fossati Decl. as **Exhibit O**.

17. On or about May 11, 2017, Defendant filed Case Management Conference Statement ("Defendant's Statement"). A true and correct copy of Defendant's Statement is attached to the Fossati Decl. as **Exhibit P**.

18. On or about November 13, 2017, Plaintiff filed an Order to Show Cause Hearing Notice ("Plaintiff's Notice"). A true and correct copy of Plaintiff's Notice is attached to the Fossati Decl. as **Exhibit Q**.

19. On or about December 13, 2017, Defendant notified Plaintiff's counsel that Defendant would be bringing an *Ex Parte* Application to Compel Plaintiff's Deposition and Request for Sanctions ("Notice of Defendant's *Ex Parte* Application"). On or about December 13, 2017, Plaintiff's counsel notified defense counsel that Plaintiff would be opposing Defendant's *Ex Parte* Application ("Plaintiff's Opposition to Defendant's *Ex Parte* Application"). True and correct copies of the Notice of Defendant's *Ex Parte* Application and Plaintiff's Opposition to Defendant's *Ex Parte* Application are attached hereto as **Exhibit R**.

20. On or about December 14, 2017, Defendant filed its *Ex Parte* Application. A true and correct copy of Defendant's *Ex Parte* Application is attached hereto as **Exhibit S**.

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT

21.    On or about December 20, 2017, Defendant filed a Motion to Compel Plaintiff's Deposition and Request for Sanctions ("Motion to Compel"). A true and correct copy of Defendant's Motion to Compel is attached to the Fossati Decl. as **Exhibit T**.

22.    On or about January 2, 2018, Plaintiff filed an Opposition to Defendant's Motion to Compel Plaintiff's Deposition and Request for Sanctions ("Plaintiff's Opposition to Defendant's Motion to Compel"). A true and correct copy of Plaintiff's Opposition to Defendant's Motion to Compel is attached to the Fossati Decl. as **Exhibit U.**

23.    On or about January 8, 2018, Defendant filed a Reply Brief in support of its Motion to Compel Plaintiff's Deposition and Request for Sanctions ("Defendant's Reply Brief"). A true and correct copy of Defendant's Reply Brief is attached to the Fossati Decl. as **Exhibit V.**

24.    On or about January 8, 2018, the Court issued a Tentative Ruling granting Defendant's Motion to Compel, in part. The Court entered this Tentative Ruling as its final Order. A true and correct copy of the Court's Tentative Ruling is attached to the Fossati Decl. as **Exhibit W.**

25.    Prior to the filing of Defendant's Notice of Removal, defense counsel reviewed the Los Angeles County Superior Court's online docket regarding the above-captioned action. Based on defense counsel's review of the docket, and to the best of defense counsel's knowledge, the foregoing documents identified as **Exhibits A through W** constitute all of the process, pleadings, orders, and other documents received by Defendant Liberty Mutual and/or on file in the state court action in Los Angeles County Superior Court. (*See* Fossati Decl., ¶ 25.)

26.    In accordance with 28 U.S.C. §1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers promptly will be served on Plaintiff's counsel and filed with the Clerk of the Los Angeles Superior Court. Therefore, all procedural requirements under 28 U.S.C. §1446 have been satisfied.

**REMOVAL JURISDICTION AND VENUE**

1.    Defendant first ascertained that this case is one which is removable through Plaintiff's latest deposition session and accompanying deposition transcripts. Plaintiff's deposition was taken on August 17 and 18, 2017, and January 16, 2018, and Defendant received a copy of Plaintiff's deposition transcript from her latest deposition session on or about January 23, 2018. This Notice of Removal is timely under 28 U.S.C. §1446(b)(3) because Defendant has filed it within 30 days after Plaintiff's latest deposition session on January 16, 2018 and receipt of Plaintiff's deposition transcript on January 23, 2018, which is when Defendant first ascertained the case is one which has become removable, and within one year from commencement of the state court action on January 26, 2017. (*See* Deposition of Plaintiff ("Pl. Dep.") attached as **Exhibits Z through BB** to Fossati Decl. filed concurrently herewith).

2.    Venue of this action lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§1441, *et seq*. and 1391(a) because this is the judicial district of this Court in which the action arose, where Plaintiff resided during her employment with Defendant, and where the causes of action arose.

**DIVERSITY JURISDICTION**

1.    This case is a civil action of which this Court has diversity jurisdiction under 28 U.S.C. §1332, and is one that may be removed to this Court by Defendant pursuant to 28 U.S.C. §§1441(a) and (b), because none of the parties in interest properly joined and served as defendants are citizens of the State of California, in which this action was brought and Plaintiff alleges she resides; and because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. For these reasons, this Court has original jurisdiction over this action. 28 U.S.C. §§1332, 1441(a) and (b).

2.    Plaintiff admitted she was, at the time of filing of the state court action and still is, a resident and citizen of the State of California, residing in Los Angeles County, in her Complaint and in her verified responses to Defendant's Form Interrogatories – General

(Set One) and in her verified responses to Defendant's Special Interrogatories (Set One). (*See* Complaint at ¶ 1; Plaintiff's Responses to Defendant's Form Interrogatories – General (Set One), Nos. 2.3, 2.5-2.6; Plaintiff's Responses to Defendant's Special Interrogatories (Set One), No. 1; Fossati Decl., ¶¶ 2, 26, 27, **Exhibits A, X & Y**.) Specifically, when asked for her driver's license information, Plaintiff identified a California driver's license. (*Id.* at Pl.'s Response to Interrog. No. 2.3.) When asked for her current and past residence addresses for the past five years, all of Plaintiff's identified residence addresses are in Southern California. (*Id.* at Pl.'s Response to Interrog. No. 2.5.) When asked for her current and past employers' addresses for the past five years, all of Plaintiff's identified employers' addresses are in Valencia, California. (*Id.* at Pl.'s Response to Interrog. No. 2.6; Pl.'s Response to Special Interrog. No. 1.)

3. Defendant, at the time the Action was commenced and at the time of the filing of this Notice of Removal, was and is a citizen of the Commonwealth of Massachusetts within the meaning of 28 U.S.C. §1332(c)(1), because at all relevant times it was a corporation formed under the laws of the Commonwealth of Massachusetts, with its principal place of business in Massachusetts. (Declaration of Michael B. Garvey ("Garvey Decl."), ¶ 2.)

4. Although Plaintiff names Alemseghed and Lo, who are residents and citizens of California, as individual defendants, complete diversity still exists by and between the parties because Alemseghed and Lo are improper sham defendants. *Morris v. Princess Cruises, Inc.*, 236 F3d 1061, 1067 (9th Cir. 2001); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232-1233 (9th Cir. 1986) (all defendants must join in removal except nominal, unknown or fraudulently joined parties). Plaintiff's naming of Alemseghed and Lo as parties to this action is improper because there is no possibility that Plaintiff can establish liability against Alemseghed and Lo based on the allegations in the Complaint for the reasons set forth below.

5. Joinder of a non-diverse defendant does not preclude diversity jurisdiction when the plaintiff cannot prove a cause of action against that defendant. Under the "*sham*

*defendant*" or "*fraudulent joiner*" doctrine, a non-diverse defendant constitutes a "*sham*" or a "*fraudulently joined*" defendant if either (1) no viable cause of action has been stated again the non-diverse defendant, or (2) evidence presented by the removing party shows there is no factual basis for the claims alleged against the non-diverse defendant. *See, e.g., Morris,* 236 F.3d at 1067 (9th Cir. 2001) (When a non-diverse defendant's joinder "is deemed fraudulent," "the defendant's presence in the lawsuit is ignored for purposes of determining diversity . . ."); *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987).

6. Under Ninth Circuit authority, defendants are "entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (holding that resident managers joined as defendants in wrongful discharge claim against former employer were joined to defeat diversity jurisdiction and that diversity existed after their citizenship was disregarded).

7. In her Complaint, Plaintiff alleges the following two causes of action against Defendants Liberty Mutual, Alemseghed and Lo: (1) harassment based on age; and (2) intentional infliction of emotional distress. (Compl. at ¶¶ 30-35, 93-98.) Plaintiff's Complaint makes a conclusory allegation that two of her supervisors, Alemseghed and Lo, harassed Plaintiff because of her age and intentionally caused Plaintiff to suffer severe emotional distress. Plaintiff's Complaint provides very few specifics concerning her supposed factual bases for asserting that Alemseghed and Lo may be held personally liable to Plaintiff for harassment based on age and/or intentional infliction of emotional distress. The only *specific* allegations in Plaintiff's Complaint and in her deposition testimony about Defendants Alemseghed and Lo's potential personal liability are addressed in the subparagraphs that follow:

a. A couple of years after Alemseghed was promoted to Regional Claims Manager in or around 2012, approximately six employees, all of whom were in their 50s and 60s were "forced to resign" and "eventually, after almost all other employees over the age of 40 were fired or pressured to resign, and, of the approximately 120 employees who

worked in the department, there were only two employees over the age of 40," including Plaintiff. (Compl. at ¶ 11(a).)

b.    In or around August of 2013, Alemseghed announced that there would be major layoffs soon. Plaintiff claims Alemseghed then began watching her every move and Plaintiff began to feel anxiety, as she was afraid to lose her job, like the other employees who were going to be laid off. Plaintiff also claims that in August of 2013, one of Plaintiff's co-workers, Regina Ghaussi, gave notice of her resignation, claiming that it was because of the disharmony in the team with which she was working. After Ghaussi's resignation, Alemseghed called Plaintiff into her office and criticized her for not being a good team member, claiming that Ghaussi had complained about Plaintiff, even though Plaintiff had a spotless work record for 30 years prior. Plaintiff told Alemseghed that she was well aware that the complaint was against the whole team, not just her. Alemseghed replied, "I have no knowledge of that." (Compl. at ¶ 11(b); Pl. Dep. Vol. II at 349:1-350:6, 356:5-371:25, 386:1-96:17.)

c.    Plaintiff claims that Alemseghed's adverse treatment of her continued. According to Plaintiff, Alemseghed went around the office in the morning and greeted every employee except Plaintiff. During meetings, Alemseghed allegedly singled out Plaintiff and asked her questions, putting Plaintiff on the spot in every meeting. Plaintiff felt extremely stressed out because of the hostile work environment and began to feel anxiety daily, before and during work. (Compl. at ¶ 11(c); Pl. Dep. Vol. II at 341:4-9, 342:15-25, 343:13-344:25, 345:17-346:16, 347:10-348:25.)

d.    In or around 2014, Alemseghed told Plaintiff that she should go "above and beyond" for the Disney account, as it was a very important client, and it was imperative to keep the customer service at its highest level. However, in or around 2014/2015, a Disney representative made a complaint against Alemseghed and expressed that she did not want Alemseghed to oversee the account any longer. Alemseghed called Plaintiff into the office and told her that she had made her look bad by jumping through too many hoops for Disney and that she "set the bar too high." (Compl. at ¶ 11(d); Pl. Dep. Vol. II, 341:9-

23, 342:2-14, 412:7-415:1.)

e. In March of 2015, Plaintiff received a "needs improvement" review for the first time in her 30 years of employment with Liberty Mutual. As Craig Ballard (a Liberty Mutual Team Manager and Plaintiff's supervisor through 2015) was going over the performance review with Plaintiff, he informed her that he did not partake in deciding the negative rating and that "It was all [Alemseghed]." (Compl. at ¶ 11(e); Pl. Dep. Vol. I at 94:24-96:12; Pl. Dep. Vol. II at 422:11-423:17.)

f. In March of 2015, Plaintiff made a formal *anonymous* complaint to Glenn Shapiro about the way Alemseghed treated her. She also made several complaints to Ballard regarding Alemseghed's treatment of her and that she felt targeted by Alemseghed due to her older age. Her complaints were not addressed. (Compl. at ¶ 11(f); Pl. Dep. Vol. II at 343:4-12, 423:18-424:3, 426:16-21, 432:23-424.)

g. At the end of 2015, Plaintiff received a Customer Service Award from 2014-2015 for exemplary claims handling from a customer, MARS. She was awarded a monetary gift of $1,000.00. Alemseghed presented her with the award and made a comment that Plaintiff got "lucky" and it would "never happen again." (Compl. at ¶ 11(g); Pl. Dep. Vol. I at 115:19-116:10, 116:14-16; Pl. Dep. Vol. II at 342:24-344:22, 470:4-472:13.)

h. In 2015/January of 2016, Lo, a new manager at that time, called Plaintiff into her office and accused her of speaking negatively about the company to the other employees without providing her the name of the employee who had complained about Plaintiff in this regard. Specifically, Lo accused Plaintiff of stating that she did not want her daughter to be a worker's compensation adjustor. Plaintiff explained that she had never spoken negatively about the company during her 30 years of employment. (Compl. at ¶ 11(h); Pl. Dep. Vol. III at 533:14-534:6, 538:17-543:6, 569:18-570:6, 570:17-21, 609:8-612:18.)

i. Plaintiff also claims Lo joked and had conversations with other employees on Plaintiff's team more than with her. (Pl. Dep. Vol. III at 593:5-599:25.)

j.      On April 14, 2016, Plaintiff was called into Lo's office with Team Manager Melanie Krikorian and Human Resources Representative Virginia Bennett on the phone. Lo advised Plaintiff that a Disney representative had concerns about a workers' compensation claim Plaintiff was working on. They inquired about a social media report that was missing, and Plaintiff explained that Ballard had conducted it himself, so she did not have a record of the report. Plaintiff was informed that there would be a two-day claims review with Disneyland that Plaintiff was not allowed to participate in and that Liberty Mutual would conduct an investigation and report back to her regarding its findings. Plaintiff believed Lo was "micro managing" her work when she asked her about a social media check[1] that Plaintiff claimed had been conducted by former manager and former employee, Craig Ballard. (Compl. at ¶ 11(i); Pl. Dep. Vol. I, at 177:13-16; Pl. Dep. Vol. III at 529:18-531:25, 532:19-533:1, 567:1-570:21.)

k.      Plaintiff suffered from high blood pressure, and her condition worsened in the spring of 2016 because of the hostile work environment. Her doctor, Dr. Lakhani,

[1] During her deposition, Plaintiff used the terms "social media check" and "social media report" interchangeably.  When asked to clarify the difference between these two terms, Plaintiff testified that a social media report is a hard copy report which is ordered through an electronic request to a third party vendor by providing certain information regarding a claimant.  Conversely, a social media check involves a claims representative reviewing or checking a claimant's FaceBook account, for example. (Pl. Depo., Vol. III,, 576:14-21, 577:4-579:14, 581:4-582:8 , 584:21-587:9.)

11      NOTICE OF REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT

recommended she take a medical leave to improve her health. She was approved for short-term disability leave from April 19 to June 29, 2016. During the STD leave, her Team Manager, Krikorian, contacted Plaintiff and informed her that a courier was being sent to pick up her laptop. Plaintiff found it odd that she was being asked to return it and asked why. Krikorian replied, "We just need the laptop returned." (Compl. at ¶ 11(j); Pl. Dep. Vol. II at 473:21-474:13, 476:18-21.)

l. Upon her return to work on June 30, 2016, Plaintiff's parking card and badge did not grant her access, so she entered the parking structure with a visitor's pass. Lo asked to speak with her in the conference room, along with Alemseghed and, on the phone, Human Resources Representative Laura Close. Plaintiff's employment was terminated effective immediately, and she was not provided a reason for the discharge. Plaintiff was soon replaced by a current employee, a Caucasian male in his late 20s. According to Plaintiff, she was terminated for illegal reasons based on her age and disability. (Compl. at ¶ 11(k); Pl. Dep. Vol. I at 187:7-23, 188:1-25, 189:24-190:6; Pl. Dep. Vol. II at 478:14-20.)

8. However, Plaintiff's unsworn allegations are mistaken and/or irrelevant and for the reasons set forth below, Plaintiff will not be able to establish liability against Alemseghed or Lo for harassment based on age or intentional infliction of emotional distress.

9. As a preliminary matter, Defendants Alemseghed and Lo did not make the decision to terminate Plaintiff's employment with Liberty Mutual, did not participate in the decision to terminate Plaintiff's employment with Liberty Mutual, and did not make a recommendation whether or not to terminate Plaintiff's employment with Liberty Mutual. Deposition of Ariam Alemseghed ("Alemseghed Dep.") at 197:23-25, 205:6-7 (attached as **Exhibit CC** to Fossati Decl.); Alemseghed Decl. ¶ 3; Lo Decl. ¶ 3 ("I did not make the decision to terminate Plaintiff's employment with Liberty Mutual. I did not participate in the decision to terminate Plaintiff's employment with Liberty Mutual. I did not make a recommendation whether or not to terminate Plaintiff's employment with Liberty

Mutual.") Plaintiff does not have any factual basis for contending Defendants Alemseghed and Lo are liable to them for their termination of employment with Liberty Mutual. Nor does Plaintiff have any factual basis for asserting she was damaged by any alleged acts by Defendants Alemseghed and Lo in Liberty Mutual's termination process.

10. In addition, Plaintiff's claims against Alemseghed and Lo have no basis in law because managing personnel is not outrageous conduct, and pleading personnel management activity is insufficient to support a claim of harassment or intentional infliction of emotional distress. *See*, *e.g, Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55.

11. Further, Plaintiff's causes of action for age harassment and intentional infliction of emotional distress rely exclusively upon the same conduct Plaintiff relies upon in support of her statutory discrimination, retaliation, disability related claims and common law wrongful termination claim:

> 23. Defendants, **through their managers and supervisors**, made a number of comments to and about [P]laintiff that exhibited ageist motivations, intentions, and consciousness. Plaintiff believes and on that basis alleges that [D]efendants' real motivation was to discharge her because of her age
>
> 24. Defendants' conduct, as alleged, violated FEHA, and **defendants committed unlawful employment practices, including by the following, separate bases for liability**:
>
> > a. **Discharging**, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part **on the basis of plaintiff's age** and/or other protected characteristics, in violation of Government Code section 12940(a);
> >
> > b. **Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's age** and/or other protected characteristics, in violation of Government Code section 12940(j);
> >
> > c. **Failing to take all reasonable steps to prevent discrimination and harassment based on age** and/or other

protected characteristics, in violation of Government Code section 12940(k); and

d.      **Retaliating against [P]laintiff for seeking to exercise rights guaranteed under FEHA and/or opposing [D]efendants' failure to provide such rights**, in violation of Government Code section 12940(h).

25.     On the basis of the above, [P]laintiff believes and alleges that **her age was a substantial motivating factor in defendants' termination of her employment**.

…

**SECOND CAUSE OF ACTION**

(Violation of FEHA (Government Code §12900, *et seq.*) (Age Harassment) – Against All Defendants and Does 1 to 100, Inclusive)

30.     The allegations set forth in **paragraphs 1 through 29** [including those alleged in support of Plaintiff's First Cause of Action for discrimination on the basis of age in violation of FEHA against Liberty Mutual]…

**TWELFTH CAUSE OF ACTION**

(Intentional Infliction of Emotional Distress – Against All Defendants and Does 1 to 100, Inclusive

91.     The allegations set forth in **paragraphs 1 through 92** [including those alleged in support of Plaintiff's First Cause of Action for discrimination on the basis of age in violation of FEHA against Liberty Mutual]…

(*See* Compl. at pg. 10, lines 7-23, pg. 11, lines 9-14, pg. 2, lines 24-28) (emphasis added). Accordingly, Plaintiff's age harassment and intentional infliction of emotional distress claims are based upon her allegations of Defendants' alleged age discrimination and Defendant's termination of Plaintiff's employment in alleged retaliation for her seeking to exercise her rights guaranteed under FEHA and/or opposing Defendants' failure to provide such rights as set forth in Paragraphs 1-29 of the Complaint.

14      NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT

12.    Plaintiff's deposition was taken by Defendant Liberty Mutual on August 17, and 18, 2017, and January 16, 2018. Plaintiff also admitted that she has no knowledge of whether Alemseghed and Lo made the decision to terminate Plaintiff's employment from Liberty Mutual. (Pl. Dep. Vol. I at 189:24-190:6, 205:2-8.) Plaintiff's case against Alemseghed and Lo is based solely on her unsubstantiated "feeling" and subjective belief that Alemseghed and Lo must have made the decision to terminate her because (1) of their titles, (2) of their mere presence during her termination meeting, along with the Human Resources representative, Laura Close, and (3) because she had seen three other employees (two males and one female) leave Alemseghed's office on the day of their termination, but had never seen those employees' personnel files and had no personal knowledge of who made the decision to terminate these employees from their employment with Liberty Mutual.

Q.    …And do you have any personal knowledge as to who made the decision to terminate you?
A.    I have no concrete knowledge, but I have a feeling.

…
Q.    But do you have any -- any personal knowledge, besides subjective belief as far as who made the decision?
A.    Correct.
…

Q.    …Do you have any personal knowledge about who made the decision to terminate your employment?
A.    I believe it was Ariam.
…
Q.    And what is that belief based on?
A.    The belief is based on the harassment that I've received from Ariam over the last few years. When Ariam had walked me out…
…
Q:    So did anyone tell you that Ariam made the decision to terminate your employment?
A:    No, but when I was -- oh, go ahead. No.

Q:    Did you participate in any management meetings wherein the decision-maker was identified as Ariam?
A:    The day I was terminated?

Q:    No. At any point in time, did anyone in management identify Ariam as a decision-maker?
A:    No.

Q:    Besides your subjective belief, do you have any written documentation to prove that Ariam was the person who made the decision to terminate your employment?

A:    No, but she's the regional claims manager.

Q:    Besides your understanding that she's the regional claims manager, do you have any other information to support your belief that she was the reason -- she was the person who made the decision?

A:    Well, in prior people that had been terminated those people had gone into Ariam's office the day that they were terminated, so the knowledge that I have of prior people that have been terminated went into Ariam's office.

Q:    All right. Besides individuals going into Ariam's office who had then been terminated, had -- any other information that supports your belied that she was the decision-maker?

A:    I believe that would be her position. That would be her role.

Q:    But as you sit here today, you -- you have no information other than your own subjective belief, correct?

A:    Well, like I said, historically speaking, the people that were terminated had come out of Ariam's office.

Q:    All right. And what individuals are you referring to?

A:    Steve Block (phonetic).

Q:    Have you ever reviewed Steven Block's personnel file?

A:    No.

Q:    Had you ever participated in any management meetings wherein the individual who was a decision-maker with regards to Steven Block's employment was identified?

A:    No.

Q:    Okay. And anyone else who walked out of Ariam's office?

A:    Ana Lopez.

Q:    Okay. Same question. Have you ever reviewed Ana Lopez's personnel file?

A:    No.

Q:    Have you ever had any discussions with anyone in management who identified Ariam as a decision-maker for Ana Lopez's employment?

A:    No.

…

Q:    Okay. Thank you. Anyone else that you saw leaving Ariam's office?

A:    Anthony Beliso.

Q:    What information do you have, if any, that Anthony Beliso's termination was a result of Ariam's decision?

A:    I saw him leave her office.

Q:    Other than that you have no information whatsoever, correct?
A:    Correct;

Q:    You've never reviewed his personnel file; correct?
A:    Correct.

Q:    You've never spoken to the legal department or anyone in ER or HR or upper management at Liberty Mutual regarding who was the decision-maker with regards to Anthony Beliso's employment; correct?
A:    Correct.
…

Q:    Do you have any personal knowledge as to whether or not Leann Lo was the decision-maker regarding your termination?
A:    I have no knowledge of that, just a belief.
…

Q:    Do you have any personal knowledge that Leann Lo was the decision-maker regarding your employment?
A:    I have no knowledge of that.

Q:    ...Do you have any personal knowledge that Leann Lo was the decision-maker with regards to the end of your employment?
A:    I have no knowledge of that.
…

Q:    Do you have any personal knowledge that Ariam had any participation in the decision to terminate Steve Block if, indeed, that is what took place?
A:    Do I have any indication that she was –

Q:    That she made the decision to terminate Steve Block?
A:    I can only -- I don't know for a fact, but she was the manager at the time.

Q:    All right. So the answer is, you don't know; correct?
A:    I don't know.

Q:    Do you know if Ariam had any participation in the decision to terminate Anthony Beliso?
A:    Yes.

Q:    And what's the basis of your knowledge for that?
A:    The basis of my knowledge of that is it was common knowledge when Tony Beliso, after 35 years, had left the company.

Q:    Yeah, but you have no knowledge whatsoever that Ariam made the decision to terminate Anthony Beliso, or that she had any authority do so; isn't that true?
A.    I believe she did, but I have no knowledge.

Q:    So you're guessing and speculating?

A:   That's what I have heard.

Q:   So it's – you're – you're speculating; correct?
A:   Well, if Tony Beliso spoke with someone and that someone had told me, is that speculation? If that's considered speculation, then yes, but I don't consider that speculation.

Q:   Uh-huh. You have no knowledge other than of office gossip; correct? With regards to Anthony Beliso's separation; correct?
…
A:   I believe it became common knowledge throughout the office, yes.

Q:   Through word of mouth and gossip; correct?
A:   Through word of mouth.

Q:   But as stated earlier, you never participated in any management meetings regarding Anthony Beliso's employment; correct?
A:   Correct.
…

Q    All right. Let's discuss this other situation. Do you know if Ariam was the decision-maker with regards to Russell Bledy's separation?
A:   I do not know.
…

Q:   Ana Lopez is another individual that you mentioned. Did you ever review her personnel file with regards to the reasons she was separated from Liberty Mutual, if at all?
A:   No.

Q:   Okay. Did you participate in any management discussions regarding Ana Lopez's employment?
A:   No.

Q:   Have you ever had any discussions with management regarding Ana Lopez's performance?
A:   No.

Q:   Ms. Slagel, do you have any personal knowledge that any manager you reported to in California made the decision to terminate your employment?
…
A:   No.

(Pl. Dep. Vol. I at 189:24-190:1-14, 190:17-192:11, 192:18-20, 192:23-193:4, 193:12-14, 193:25-194:14, 204:14-17, 205:2-8, 212:1-7; Pl. Dep. Vol. II at 325:3-327:7, 356:25-359:10, 369:11-15, 369:22-371:25.)

13. Plaintiff's testimony reveals there is no possibility that she can establish liability for a claim of age harassment or a claim for intentional infliction of emotional distress, the only two causes of action against Alemseghed and Lo, because Plaintiff's testimony constitutes nothing more than inadmissible speculation and conjecture. *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 663 (holding that conclusory statements are not evidence). Thus, Plaintiff has no substantive evidence to establish liability against the individual defendants. In addition, the conduct alleged is not sufficiently "outrageous" to support a claim for intentional infliction of emotional distress and would nevertheless be barred by the doctrine of workers' compensation exclusivity.

14. A *prima facie* case of hostile work environment under the FEHA requires proof that: (1) the individual was subjected to verbal or physical conduct because of a protected characteristic (*i.e.*, age); (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive so as to alter the terms or conditions of employment and create an abusive working environment. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1980). This standard must be assessed from the perspective of a reasonable person belonging to the protected category of the plaintiff. *Nazir v. United Airlines*, 178 Cal.App.4th 243, 263-64 (2009). The harassment cannot be occasional, isolated, sporadic or trivial; Plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature. *Muller v. Automobile Club of So. Calif.*, 61 Cal.4th 431, 446 (1998).

15. In the present case, Plaintiff alleges that she was harassed because of her age whenever her supervisors, Alemseghed and Lo, commented on her work and provided her with instructions regarding her work duties and performance. Apart from permissible statements associated with evaluating Plaintiff's work, even if all these statements had been made to Plaintiff, they do not rise to the level of severity or pervasiveness required to find a hostile work environment. Thus, Plaintiff's harassment claim will fail as a matter of law.

16. The California Supreme Court has identified the crucial factors than an employee must prove to establish a cause of action for intentional infliction of emotional

NOTICE OF REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT

distress under California law. A *prima facie* case requires (1) outrageous conduct by defendant; (2) intention to cause emotional distress, or the reckless disregard for the probability of causing such distress; (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress. *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155 and n.7 (1987) (mere insulting language without more ordinarily does not constitute outrageous conduct). In *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55 (1996), the Court held employment actions which constitute management actions necessarily are not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. An allegation against personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. *Janken, supra*, 46 Cal.App.4th at 80. *Accord*, *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1352 (9th Cir. 1984) (firing an employee by itself does not constitute the 'outrageous' conduct necessary to satisfy this claim, even if the firing was without cause); *Cole, supra*, 43 Cal.3d at 160 ("In order to properly manage its business, every employer must on occasion . . . discipline employees. Employers are necessarily aware that their employees will feel distressed by adverse personnel decisions, while employees may consider any such adverse action to be improper and outrageous. Indeed, it would be unusual for an employee not to suffer emotional distress as a result of an unfavorable decision by his employer."); *Minniti v. TRW*, 2 IER Cases 765 (C.D. Cal. 1987) (alleged retaliation for complaint about racial discrimination was objectionable and unreasonable but conduct was not "outrageous"); and *Trujillo v. FDIC*, 3 IER Cases 38, 7-8 (C.D. Cal. 1988) (mere termination of employment and ignoring possibility that employee would be unable to obtain comparable employment was not outrageous).

17.     Here, Alemseghed's and Lo's conduct cannot be deemed "outrageous" as a matter of law. First, the alleged conduct by Alemseghed and Lo constitutes management actions undertaken in accordance with Alemseghed's and Lo's indirect supervisory role over Plaintiff and as such, is insufficient to support a claim of harassment or intentional

inflction of emotional distress, even if improper motivation is alleged. *Janken, supra*, 46 Cal.App.4th at 80. Second, Plaintiff's unsubstantiated *belief* that Alemseghed and Lo made the decision to terminate her employment, cannot, as a matter of law, constitute outrageous conduct beyond the bounds of human decency.

18.     Alternatively, any damages Plaintiff may be arguably entitled to that are attributable to emotional distress in this case must be pursued through California's Workers' Compensation Act, Labor Code §3601, *et seq.* Plaintiff's claims are preempted if the disputed conduct is a normal part of the employment relationship and the compensation bargain, whether caused by negligent or intentional acts. *See Livitsanos v. Superior Court* (1992) 2 Cal. 4th 744, 754-755; *Cole v. Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 160 ("an employee suffering emotional distress…may not avoid the exclusive remedy provision of the Labor Code by characterizing the employer's decision as manifestly unfair, outrageous, harassment or intended to cause emotional disturbance… the action is barred by the exclusiveness clause no matter what its name or technical form."); *Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 708 (1994); *Arendall v. Auto Parts Club, Inc.*, 29 Cal.App.4th 1261, 1265 (1994). Emotional distress caused by misconduct in employment relations involving, for example, promotions, demotions, criticism of work practices, and terminations, is a normal part of the employment environment. *Fermino, supra*, 7 Cal.4th at 708. A cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law. *Id.* As such, Plaintiff's exclusive remedy for her emotional distress claims lies within the Workers' Compensation Act.

19.     As demonstrated by Plaintiff's Complaint and her own testimony, Alemseghed and Lo are improperly joined as sham and nominal defendants and therefore should be disregarded for purposes of determining jurisdiction. *Morris v. Princess Cruises, Inc.*, 236 Fed. 1061, 1067 (9th Cir. 2001); *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232-33 (9th Cir. 1986) (all defendants must join in removal except nominal, unknown or fraudulently joined parties.)

20.     Lastly, the presence of Doe defendants has no bearing on the diversity with respect to removal. *See* 28 U.S.C. §1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

## **THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.00**

1.     This Action also meets the amount in controversy requirement for removal based on diversity jurisdiction. 28 U.S.C. §1332(a) authorizes the removal of cases in which there is diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

2.     In determining whether the amount in controversy exceeds $75,000.00, the Court must presume Plaintiff will prevail on her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes "plaintiff prevails on liability") and *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3rd Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Moreover, the argument and facts set forth herein appropriately may be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840, n.1 (9th Cir. 2002), *citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

3.     The amount in controversy may include general and special compensatory damages and attorneys' fees recoverable by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367, (9th Cir. 1982) *cert denied*, 459 U.S. 945 (1982) (attorneys' fees may be taken into account to determine jurisdictional amount). The Court may examine the nature of the action and the relief sought, including attorneys' fees. *See, e.g., Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (attorneys' fees in individual employment discrimination cases often exceed damages). The Ninth Circuit has made clear that statutory attorneys' fees are included as a basis for determining the jurisdictional amount in controversy. *See*

22      NOTICE OF REMOVAL OF ACTION TO THE
UNITED STATES DISTRICT

*Galt*, 142 F.3d at 1155-56. In determining whether the amount in controversy meets the jurisdictional minimum, attorneys' fees are calculable beyond the time of removal. *Simmons*, 209 F.Supp. at 1035.

4. Punitive damages also are included in calculating the amount in controversy. *See Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *see also Aucina v. Amoco Oil Co.*, 871 F.Supp. 332, 334 (S.D. Iowa 1994) (nothing that "the purpose of punitive damages is to capture a defendant's attention and deter others from similar conduct" and the plaintiff's prayer for punitive damages "might alone" exceed the jurisdictional minimum); *White v. FCI USA, Inc.*, 319 F.3d 672, 674-76 (5th Cir. 2003) (finding it facially apparent that plaintiff's wrongful termination claim exceeded $75,000 based on her "lengthy list of compensatory and punitive damages," including loss of pay, fringe benefits, impaired earning capacity, emotional distress damages, combined with a claim for attorneys' fees).

5. Without conceding that Plaintiff will prevail on her claims or could recover damages in any amount whatsoever, the amount in controversy in this action exceeds $75,000.00. *See* 28 U.S.C. §1332(a). Where, as here, a plaintiff's state court complaint is silent as to the amount of damages claimed, the removing defendant need establish only that it is more probable than not that the plaintiff's claims exceed the jurisdictional minimum. *Guglielmino v. McKee Foods, Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 860-61 (9th Cir. 1996). Here, the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, for the following reasons:

a. Plaintiff alleges in her Complaint that she lost earnings that she would have earned if Defendant had not terminated her employment with Defendant, although the Complaint does not specify Plaintiff's alleged damages. Plaintiff was employed with Defendant for more than 30 years. (*See* Compl. at ¶ 8.)

b. According to Plaintiff's verified response to Defendant's Form Interrogatories – General (Set One), No. 8.7, dated July 28, 2017 (Fossati Decl., ¶ 26,

**Exhibit X**), Plaintiff estimated her economic losses, at a minimum at approximately $26,000.00, which Plaintiff calculated by multiplying Plaintiff's average monthly income of $8,000.00, by the time since Plaintiff's employment with Defendant ended on June 30, 2016 and when Plaintiff acquired new employment on August 2016, plus the difference in Plaintiff's past and current wages. Plaintiff also claims she lost yearly bonuses ranging from $3,000 to $10,000, past benefits such as medical insurance, holiday time, sick time, past pension, and 401(k). (*Id.* at Pl.'s Response to Interrog. No. 8.7.) Thus, based on Plaintiff's own verified discovery responses, she estimates, at a minimum, lost earnings of at least $29,000 to $36,000. (*Id.*)

   c. As to her claims for violation of FEHA, Labor Code §1102.5, wrongful termination, and intentional infliction of emotional distress, Plaintiff seeks to recover exemplary and punitive damages. (*See* Compl. at ¶¶ 14, 28, 35, 42, 55, 63, 71, 85, 92, 98, and Prayer for Relief ¶ 2.) Assuming conservatively that Plaintiff could recover punitive damages in a 1:1 ratio with her lost earnings, she would recover at least $29,000 to $36,000 in punitive damages. However, Plaintiff's potential recovery of punitive damages could be higher. In *Chopourian v. Catholic Healthcare West*, No. 2:09-cv-2972-KJM-KJN, a jury in the Eastern District of California awarded a plaintiff $18,750,000 in punitive damages for defamation, more than three times the plaintiff's actual damages in that case. (See Request for Judicial Notice ("RJN") at ¶ 1.) Similarly, in *Thomas v. Tapout*, LLC, No. BC399188, a Los Angeles County jury awarded a plaintiff $2,400,000 in punitive damages, nearly three times the underlying damages award of approximately $840,000. (See RJN at ¶ 2.) If Plaintiff recovered punitive damages at a ratio of 3:1 with her compensatory damages (based on the conservative estimate described above), she would recover at least $87,000 to $108,000 in punitive damages. This amount added to the approximate amount of lost wages in the amount of $29,000 to $36,000, equals $116,000 to $123,000.

   d. Moreover, Plaintiff seeks to recover statutory attorneys' fees as to the majority of the causes of action alleged in the Complaint. (*See* Compl. at ¶¶ 16, 29, 34, 41, 48, 54, 62, 70, 86, and Prayer for Relief at ¶ 4.)

e. Plaintiff also seeks to recover for alleged "psychological and emotional distress, humiliation, and mental and physical pain and anguish" as to her claims for Labor Code §11025, wrongful termination, defamation, and intentional infliction of emotional distress. (*See* Compl. at ¶¶ 14, 27, 33, 40, 47, 53, 61, 69, 83, 90, 96, 97, and Prayer for Relief at ¶ 2.) In her discovery responses, Plaintiff alleges she "has experienced the following emotional reactions to the adverse employments at issue: shock, disbelief, embarrassment, severe distress, depression, stress, anxiety, fear, anger, insomnia, fatigue, grief, lack of joy, disappointment, sadness, despair." (*See* Pl.'s Response to Interrog. No. 10.2.) In addition, Plaintiff alleges she "has experienced the following physical reactions to the adverse employments at issue: physical discomfort, crying, intense fatigue, weight loss, lethargy, lack of energy, tiredness, stomach pain, headaches, numbness, nausea, chest pain, difficulty in falling asleep, and restless sleep." (*Id.*) Moreover, Plaintiff alleges she "has experienced the following diminished quality of life issues as a result of the adverse employment actions at issue: Feelings of loss, feelings of low self-worth, loss of concentration, forgetfulness and decreased ability to think clearly." (*Id.*)

f. Assuming Plaintiff recovered in full on her claims as alleged in the Complaint, her emotional distress damages, punitive damages, and attorneys' fees more likely than not would exceed $75,000 in and of themselves. Adding emotional distress damages, punitive damages (as discussed above), and attorneys' fees to the conservative estimate of lost wages of $29,000 to $36,000 (as discussed above), the amount in controversy clearly exceeds $75,000.

6. In sum, Plaintiff's potential recovery under the facts as alleged in her Complaint exceeds the amount in controversy. It cannot be said to a legal certainty that Plaintiff would not be entitled to recover the jurisdictional amount. *See Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996); *Watson v. Blankenship*, 20 F.3d 383, 386-87 (10th Cir. 1994). Therefore, the claims alleged and recovery requested in Plaintiff's Complaint demonstrate the amount in controversy in this case exceeds the requirements under 28 U.S.C. §1332(a).

WHEREFORE, Defendant removes the above-entitled action now pending in the Superior Court of the State of California for the County of Los Angeles to this Court.

Respectfully submitted,

DATED:  January 25, 2018                    JACKSON LEWIS P.C.


                                     By:    /S/ Yvonne Arvanitis Fossati
                                            Yvonne Arvanitis Fossati
                                            Thomas G. Mackey
                                            Dorothy L. Black

                                            Attorneys for Defendant
                                            LIBERTY MUTUAL INSURANCE COMPANY

4821-0400-6219, v. 1

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT